**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01543-NYW

STANLEY CHIGOZIE NWABUWA,

     Petitioner,

v.

WARDEN OF DENVER CONTRACT DETENTION FACILITY, in his official capacity,
ACTING FIELD OFFICE DIRECTOR, DENVER FIELD OFFICE, in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
TODD M. LYONS, in his official capacity, and
TODD BLANCHE, in his official capacity,

     Respondents.

_____

**ORDER**

_____

This matter is before the Court on the following:

(1)    Petitioner's Emergency Motion to Enforce Court Order; Order to Show Cause; Sanctions; and Order Requiring Respondents to Facilitate Petitioner's Return to the United States ("Emergency Motion to Enforce") [Doc. 12, filed May 20, 2026];

(2)    Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") [Doc. 1, filed April 10, 2026]; and

(3)    Respondents' Motion for Expedited Ruling to Vacate Order Enjoining Respondents from Removing Petitioner from the United States ("Motion to Vacate") [Doc. 9, filed May 1, 2026].

Respondents have responded to the Petition, [Doc. 8], and have responded to the Emergency Motion to Enforce, [Doc. 15]. Petitioner has responded to the Motion to

1

Vacate.  [Doc. 11].  For the reasons stated herein, the Court respectfully **DENIES IN PART** and **RESERVES IN PART** the Emergency Motion to Enforce; **DENIES** Petitioner's Habeas Petition; and **GRANTS** Respondents' Motion to Vacate.

## BACKGROUND

The factual background that gives rise to the Emergency Motion to Enforce is undisputed.  Petitioner Stanley Chigozie Nwabuwa ("Petitioner" or "Mr. Nwabuwa") is a citizen of Nigeria who has been present in the United States since 2024.  [Doc. 1 at ¶ 2]. He was detained beginning on June 7, 2024, when he entered the United States without inspection and was apprehended by the United States Border Patrol and placed into custody.   [*Id.*].   He was given a bond hearing upon his request for a custody redetermination hearing pursuant to 8 C.F.R. § 1236, and was denied bond by an immigration judge ("IJ") who concluded that Petitioner had failed to meet his burden of establishing that he was not a flight risk because he was a recent entrant; had not filed any applications for relief; had never met his sponsor; and had no family members in the United States.  [*Id.* at ¶ 7].

As part of his Petition, Mr. Nwabuwa argues that since the IJ denied bond on October 8, 2024, his circumstances "have materially changed" because he had since filed applications for asylum, withholding of removal, and protection under the Convention Against Torture and had reestablished his relationship with a brother who resides in the United States.  [*Id.* at ¶¶ 8, 39].  Petitioner argues that his prolonged, 22-month detention violated the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act.  [*Id.* at ¶¶ 5–6, 107].  He asks the Court to order that he be immediately released from custody; alternatively, he asks this Court to

2

order a bond hearing.  [*Id.* at ¶¶ 138–39].  He specifically indicates that he does not seek review of the merits of his removal proceedings, but instead, only challenges the legality of his continued physical detention after more than 22 months in custody.  [*Id.* at 10].

In order to preserve its jurisdiction to consider the Petition, this Court entered an Order on April 14, 2026 barring Respondents from removing Mr. Nwabuwa from the District of Colorado or the United States unless or until this Court or the United States Court of Appeals for the Tenth Circuit vacates the Order ("April 14 Order").  [Doc. 4].  In that same April 14 Order, the Court ordered Petitioner to serve Respondents with a copy of the Habeas Petition on or before April 17, 2026 and file a proof of service by April 21, 2026; ordered Respondents to show cause as to why the Petition should not be granted within seven days of service; and set a deadline for Petitioner to reply within seven days after Respondents' response.  [*Id.*].

On May 1, 2026, Respondents responded to the Petition, arguing that on July 11, 2025, an immigration judge denied Petitioner's application for asylum and ordered him removed to Nigeria.  [Doc. 8 at 2].  Mr. Nwabuwa filed an appeal to the Board of Immigration Appeals ("BIA") on August 6, 2025.  [*Id.*].  On April 27, 2026, after the filing of the instant Petition, the BIA denied Petitioner's appeal and Mr. Nwabuwa's order of removal became final.  [*Id.*].  Respondents thus argue that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1231 to effectuate his removal, and no habeas relief is appropriate because it had not been 90 days or six months since the order of removal became final.  [*Id.* at 3].  Respondents concurrently request through their Motion to Vacate that this Court vacate its April 14 Order because they have secured travel documents for Mr. Nwabuwa's removal to Nigeria.  [Doc. 9].  In their Motion to Vacate, Respondents

represented that United States Immigration and Customs Enforcement ("ICE") is "prepared to effectuate his removal imminently, but that removal cannot be effectuated unless and until this Court's do-not-remove order is vacated." [*Id.* at 1]. Petitioner responds by arguing that he had appealed the BIA's dismissal of his appeal to the Tenth Circuit on May 1, 2026, seeking substantive review on the merits. [Doc. 11 at 1–2]. He also indicates that he intends to seek a stay of his removal from the Tenth Circuit. [*Id.* at 2].

On May 20, 2026, Petitioner filed the instant Emergency Motion to Enforce, notifying the Court that despite its April 14 Order, ICE removed him to Nigeria. [Doc. 12]. Petitioner requests that the Court issue a show cause order as to why Respondents' actions did not violate the Court's April 14 Order and should not be sanctioned, and he also seeks to enforce the Court's April 14 Order and immediately facilitate his return to the United States. [*Id.*]. Petitioner also requests that the Court require Respondents to immediately disclose:

> (1) the precise date and time removal occurred; (2) the officials and agencies involved in authorizing or carrying out the removal; (3) all communications concerning the Court's April 14, 2026 Order and Petitioner's removal; (4) Petitioner's current physical location and custodial or supervisory status; (5) whether Respondents contend the Court's Order ceased to operate and, if so, the legal basis for that position; and (6) the steps Respondents have taken or will take to facilitate Petitioner's return following removal.

[*Id.* at ¶ 22]. Petitioner also requests "the preservation of all records, records, communications, manifests, approvals, emails, text messages, transport records, and electronically stored information concerning Petitioner's removal." [*Id.* at ¶ 24]. Finally, Petitioner requests that the Court further consider whether contempt findings, sanctions, or other additional remedial relief are warranted. [*Id.* at ¶ 25].

This Court immediately ordered the Respondents to respond to the Emergency Motion to Enforce no later than noon the following day and set a Telephonic Status Conference for the following day at 2:30 p.m. [Doc. 13]. The Court further ordered that Respondents have a representative to answer the Court's questions regarding Petitioner's removal. [*Id.*].

Respondents filed their Response to the Emergency Motion to Enforce at 12:01 p.m. on May 21, 2026. [Doc. 15]. In their Response, Respondents admit that Petitioner was removed to Nigeria on May 20, 2026. [*Id.* at 3]. They state that they "greatly regret this error and are taking steps to avoid such an error in the future," noting that they "are dealing with an unprecedented onslaught of immigration detention-related habeas petitions." [*Id.*]. They further explain that ICE's standard procedure with respect to detained non-citizens who are subject to a do-not-remove order is to enter a comment in ICE's EARM (ENFORCE Alien Removal Module), and "due to an oversight," such a comment reflecting this Court's April 14 Order was missed. [*Id.*]. Respondents represent that "[m]oving forward, ICE intends to enter a 'hold' in the EARM system for each petitioner with a do-not-remove order rather than relying on the comments." [*Id.*].

Counsel for Petitioner and Respondents appeared before the Court at the Telephonic Status Hearing, along with Sean Christner ("Mr. Christner"), a supervisory deportation and detention officer as representative of ICE. [May 21 Hearing Tr. at 1:16–24].[1] Mr. Christner explained that while EARM is a national database, he only has access

---

[1] The Court cites to a preliminary nonpublic version of the transcript of the Telephonic Status Conference in this matter. Accordingly, there may be some variations with respect to page numbers, line numbers, and precise language should an official transcript be ordered and prepared.

to the portion of EARM within his area of responsibility, including Denver, Colorado. [*Id.* at 3:7–4:8]. When a court issues an order that bars removal of a noncitizen associated with a habeas petition, the Assistant United States Attorney forwards that order to the ICE Office of Principal Legal Advice ("OPLA"), which then forwards the ICE regional office the information so it is manually added to the noncitizen's EARM record by the ICE officer responsible for the noncitizen's case. [*Id.* at 4:20–5:14]. In Petitioner's case, a hold was not flagged with his EARM entry, despite comments reflecting that he was subject to a do-not-remove order. [*Id.* at 4:9–19]. Furthermore, Mr. Christner admitted that ICE did not wait for confirmation from OPLA and the AUSA before removing Mr. Nwabuwa to Nigeria. [*Id.* at 5:15–6:10]. Mr. Christner conceded that Mr. Christner's removal was a mistake. [*Id.*].

The Parties agreed that the Respondents could, and potentially should, facilitate his return to the United States at the Respondents' expense. [*Id.* at 2–7]. But the Parties could not agree as to whether Mr. Nwabuwa should be released pending return. [*Id.*] Respondents' position is that should Mr. Nwabuwa return, he would be subject to mandatory detention under 8 U.S.C. § 1231(a)(1)(A), such that his Petition challenging his prolonged detention under 8 U.S.C. § 1225 (or 8 U.S.C. § 1226, as Petitioner argues) is moot. *See* [Doc. 15 at 4]. During the Telephonic Status Conference, counsel for Petitioner argued that the Court should order Respondents to return Mr. Nwabuwa to the United States and release him upon arrival. [May 21 Hearing Tr. at 7:2–7].

## ANALYSIS

### I.    Respondents Unequivocally Violated the Court's April 14 Order

Petitioner requests that the Court hold Respondents in contempt for violating its

April 14 Order.  To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed; that the defendant had knowledge of the order; and that the defendant disobeyed the order. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

There is no dispute—nor could there be on the record before this Court—that Respondents unequivocally violated this Court's April 14 Order by removing Petitioner from not only the District of Colorado, but also the United States, while the April 14 Order was in full force and effect.  *See* [Doc. 15 at 1–2].  And there can also be no doubt that Respondents had notice of, and understood without any ambiguity, that they could not remove Mr. Nwabuwa from the District or the United States without this Court, or the Tenth Circuit, vacating the April 14 Order.  *See* [Doc. 9 at 1 ("U.S. Immigration and Customs Enforcement . . . has obtained a travel document for Petitioner and is prepared to effectuate his removal imminently, **but that removal cannot be effectuated unless and until this Court's do-not-remove order is vacated**." (emphasis added))].  As other federal courts have observed, "[j]udicial orders are not suggestions; they are binding commands that the Executive Branch, no less than any other party, must obey." *Dcosta v. Warden of Immigr. Det. Facility*, No. 4:25-cv-06177, 2026 WL 74187, *3 (S.D. Tex. Jan. 9, 2026) (quoting *J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *2 (D.C. Cir. Nov. 14, 2025)).  And Respondents' violation of this principle and the Court's April 14 Order— inadvertent or otherwise—is not justified by the fact that Respondents are "dealing with an unprecedented onslaught of immigration detention-related habeas petitions." [Doc. 15 at 3].  Given similar types of errors that have recounted by courts across the country, this Court is troubled by ICE's failure to implement the safeguard reflected in their Response,

7

i.e., "[m]oving forward, ICE intends to enter a 'hold' in the EARM system for each petitioner with a do-not-remove order rather than relying on the comments," [*id.*], prior to the "oversight" that occurred with respect to Mr. Nwabuwa's removal to Nigeria.

## II.    Appropriate Remedy

Having now found that Respondents' conduct in removing Mr. Nwabuwa to Nigeria unequivocally violated the Court's unambiguous April 14 Order, of which they had knowledge, the Court now turns to considering the appropriate remedy. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). A contempt sanction is considered civil if its purpose is remedial and for the benefit of the complainant. *Id.* Courts may only order sanctions for civil contempt for either or both of two distinct remedial purposes: (1) to compel or coerce obedience to a court order; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992).

### A.    Return and Release

Petitioner is correct that many courts have ordered Respondents to facilitate the return of a noncitizen removed in direct violation of a court's order to restore the status quo pre-removal. *See, e.g.*, *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2025 WL 3771402, at *1 (D. Utah Dec. 31, 2025) (citing *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); *D.V.D. v. D.H.S.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025)); *Dcosta*, 2026

8

WL 74187, at *4. But here, this Court finds that Petitioner's request for return and release is not an appropriate remedy.

***Original Petition.***  When Mr. Nwabuwa initially filed his Petition on April 10, 2026, he was not subject to a final order of removal because his appeal of the IJ's denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture was pending before the BIA. [Doc. 1 at ¶ 3]. Petitioner argued that he had been subject to prolonged detention of more than twenty-two months, without a constitutionally adequate bond hearing, violated the Due Process Clause of the Fifth Amendment pursuant to *Zadydas v. Davis*, 533 U.S. 678 (2001). [*Id.* at ¶ 5]. Mr. Nwabuwa also argued that his detention violated that Immigration and Naturalization Act because he was not subject to mandatory detention under 8 U.S.C. § 1226(c) or 8 U.S.C. § 1225, but rather was subject to discretionary detention under 8 U.S.C. § 1226(a). [*Id.* at ¶ 6].

***Subsequent Circumstances.***  In their Response to the Petition, Respondents indicate that Mr. Nwabuwa's order of removal became final on April 27, 2026, when the BIA denied his appeal. [Doc. 8 at 2–3]. Respondents thus argue that Petitioner is detained mandatorily pursuant to 8 U.S.C. § 1231(a), and statutorily, Respondents had 90 days to remove him. [*Id.* at 3–4]. They assert that the Petition has been rendered moot. [*Id.* at 4]. Respondents concurrently filed the Motion to Vacate the Court's April 14 Order the same day as their Response, arguing that they had obtained travel documents for Mr. Nwabuwa and could facilitate his removal to Nigeria but for the Court's April 14 Order. [Doc. 9]. Mr. Nwabuwa opposes the Motion to Vacate on the basis that Respondents have not established that removal was imminent and because removal

9

would deprive Mr. Nwabuwa of the opportunity to pursue a stay of removal from the Tenth Circuit pending his appeal.  [Doc. 11 at 4].

During the May 21 Telephonic Status Conference, counsel for Petitioner conceded that due to the BIA's dismissal of his appeal, Mr. Nwabuwa is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a).  [May 21 Hearing Tr. at 7:8–16].  Nevertheless, Petitioner argued that the Court should solely focus on his status when he initially filed the case, i.e., that he brought a due process challenge to prolonged detention, and that regardless of the statutory provision that was applied, his detention of over twenty-two months violated the Fifth Amendment of the Constitution and Mr. Nwabuwa should be returned to the United States and released from custody.  [*Id.* at 9:2–16].  This Court respectfully disagrees, for at least the following reasons.

First, unlike many detained noncitizens before the Court on habeas petitions, Mr. Nwabuwa concedes that he has already had a bond hearing on October 10, 2024, during which the IJ concluded that bond was not warranted.  [Doc. 1 at ¶ 7].  Petitioner further admits that his Petition does not seek review of that bond determination, either based on the substantive determination or a procedural flaw with respect to the burden of proof.  [May 21 Hearing Tr. at 10:14–11:15].  Rather, in the Petition, Mr. Nwabuwa argues that because materially changed circumstances and the passage of more than twenty-two months in detention, his constitutional and statutory rights were violated because he had "not received a renewed custody determination or any constitutionally adequate review of his continued detention."  [Doc. 1 at ¶ 9].  But Mr. Nwabuwa provides this Court no authority to support his contention that having had one bond hearing, he was necessarily entitled to a second one based on materially changed circumstances—particularly now

10

that he is subject to a final order of removal and mandatory detention under § 1231(a) and 90 days had not elapsed.  *See generally* [Doc. 1; Doc. 11; Doc. 12].[2]   And though the Court could imagine a scenario where prolonged detention beyond an initial bond determination hearing might violate both the INA and due process, it would be improper for the Court, as a neutral arbiter, to craft arguments on behalf of Petitioner, particularly given that he has been represented by able counsel since the inception of this case.  *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants); *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

Second, even when a district court has ordered a removed noncitizen returned after an improper removal, it does not necessarily follow that release from ICE detention is legally justified.  *See Vasquez*, 2026 WL 622630, at *7.  As previously discussed, Mr. Nwabuwa is now subject to mandatory detention under 8 U.S.C. § 1231(a).  In this case, the Court need not determine whether the entirety of his twenty-two-month detention should be considered in determining whether his detention has become prolonged and unconstitutional.  Even when the presumptive time period for constitutional detention has elapsed, the touchstone inquiry for a habeas court is "whether the detention in question exceeds a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S. at 699.  Given that Respondents secured travel documents for Mr. Nwabuwa as of May 1, 2026, [Doc. 9 at 1], and based on the remainder of the record before it, this Court would be

---

[2] In the context of mandatory detentions pursuant to 8 U.S.C. §§ 1225(b), 1225(c), and 1226(a), the Supreme Court has held that a noncitizen is not entitled to periodic bond hearings every six months.  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

hard-pressed to conclude that detention now has exceeded a period of time reasonably necessary to secure removal.

Third, Mr. Nwabuwa initially opposed this Court vacating its April 14 Order to allow him time to petition the Tenth Circuit for a stay. But on May 6, 2026, two weeks before Respondents removed him to Nigeria on May 20, 2026, the Tenth Circuit denied Petitioner's emergency motion for stay of removal, observing that Petitioner did not address the relevant factors recognized in *Nken v. Holder*, 556 U.S. 418, 434 (2009). *See Nwabuwa v. Blanche*, Case No. 26-9535, ECF No. 8 (10th Cir. May 6, 2026). The denial of the stay was without prejudice to Petition "filing a motion that properly addresses the relevant factors." [*Id.* at 2]. This Court takes judicial notice that, to date, Petitioner has not renewed his motion to stay of removal before the Circuit. Fed. R. Evid. 201; *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (recognizing that a court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand).

Therefore, this Court declines to issue an Order to Show Cause as to why Respondents should not be ordered to return Mr. Nwabuwa to the United States.

### B.    Attorneys' Fees

As discussed above, this Court may use civil contempt sanctions to compensate Petitioner for injuries resulting from the Respondents' noncompliance with a court order. *See Reliance Ins. Co.*, 159 F.3d at 1318. Although this Court specifically ordered Respondents to respond to the Emergency Motion to Enforce and Respondents did so, it now, out of an abundance of caution, orders Respondents to **SHOW CAUSE** as to why they should not be held in civil contempt and ordered to compensate Petitioner for

reasonable attorney's fees associated with the filing of the Emergency Motion to Enforce as a sanction for their violation of this Court's April 14 Order while it was in full force and effect.

**CONCLUSION**

Accordingly, it is **ORDERED** that:

(1)   Petitioner's Emergency Motion to Enforce Court Order; Order to Show Cause; Sanctions; and Order Requiring Respondents to Facilitate Petitioner's Return to the United States [Doc. 12] is **DENIED IN PART** and **RESERVED IN PART**;

(2)   Respondents shall **SHOW CAUSE** no later than **June 8, 2026** why they should not be held in civil contempt for violating the Court's April 14 Order and why Petitioner should not be awarded attorney's fees associated with the filing of the Emergency Motion to Enforce;

(3)   Petitioner's Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**;

(4)   Respondents' Motion for Expedited Ruling to Vacate Order Enjoining Respondents from Removing Petitioner from the United States [Doc. 9] is **GRANTED**; and

(5)   The Court's April 14, 2026 Order is hereby **VACATED**.

DATED:  June 1, 2026                BY THE COURT:

_____
Nina Y. Wang
United States District Judge